## Case No. 6,312.

### Ex parte HEBARD.

.[4 Dill. 380.] [1]

### Circuit Court, D. Kansas. 1877.

JURISDICTION OVER MILITARY RESERVATION OF FORT LEAVENWORTH — ARTICLE 1, § 8, OF THE CONSTITUTION OF THE UNITED STATES CONSTRUED—HABEAS CORPUS—PRACTICE.

1. The title to the land constituting the military reservation of Fort Leavenworth, in Kansas, has always been in the United States: in 1875, at the instance of the secretary of war, the legislature of the state passed an act ceding exclusive jurisdiction to the United States over all territory included within the reservation: congress never expressly assumed this jurisdiction: subsequently a larceny was committed on the reservation: *Held*, that the jurisdiction over the offence was in the courts of the general government, and not in those of the state of Kansas.

2. Section 8 of article 1 of the constitution of the United States, construed; and it was *held* that, whenever the United States is the owner of the land it uses as a fort, etc., the legislature of the state may permit congress to exercise exclusive jurisdiction over such land.

Mr. Thomas P. Fenlon, an attorney of this court, presented the petition of Samuel Hebard for the allowance of a writ of habeas corpus. The petitioner was charged with larceny, committed in 1877, on the military reservation of Fort Leavenworth, and was held to answer by a commissioner of the circuit court of the United States for the district of Kansas, and committed for want of bail. The question involved was, whether the federal courts have jurisdiction of offences of this character committed on the reservation, or whether the jurisdiction is in the courts of the state. On the 22d day of February, 1875, the general assembly of the state of Kansas, at the instance of the secretary of war (Rev. St. § 1838), passed the following act:

"Chapter LXVI., Laws 1875.

"Fort Leavenworth Military Reservation.

"An act to cede jurisdiction to the United States over the territory of the Fort Leavenworth Military Reservation.

"Be it enacted by the legislature of the state of Kansas:

"Section 1. That exclusive jurisdiction be and the same is hereby ceded to the United States over and within all the territory owned by the United States, and included within the limits of the United States military reservation, known as the Fort Leavenworth reservation, in said state, as declared from time to time by the president of the United States, saving, however, to the said state the right to serve civil or criminal processes within said reservation, in suits or prosecutions for or on account of rights acquired, obligations incurred, or crimes committed in said state but outside of said cession and reserva-

tion; and saving, further, to said state, the right to tax railroad, bridge, and other corporations, their franchises and property, on said reservation.

"Sec. 2. This act shall take effect and be in force from and after its publication once in the Kansas Weekly Commonwealth.

"Approved February 22, 1875."

No act of congress assuming the jurisdiction thus ceded has been passed. The ownership of the land constituting the reservation has always been, and now is, in the United States. The constitution of the United States provides that "congress shall 'have power to exercise exclusive legislation, in all cases whatsoever," over the District of Columbia, "and to exercise like authority over all places purchased by consent of the legislature of the state in which the same shall lie, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings." Article 1, § 8.

Mr. Fenlon, for petitioner.

Mr. Peck, Dist. Atty., contra.

MILLER, Circuit Justice. This is an application for a writ of habeas corpus, on behalf of Samuel Hebard. The petitioner states that he is held a prisoner for want of bail, under a commitment on a charge of larceny, the order committing him to the custody of the United States marshal having been made by Samuel D. Lecompte, a commissioner of the circuit court of the United States. It appears, very clearly, that the offence for which plaintiff is held to bail was committed on the military reservation of Fort Leavenworth, and the only question in the case is, whether the officer of the United States who ordered the imprisonment of the petitioner had jurisdiction of the case. This is asserted by the district attorney, on the ground that Fort Leavenworth is within the exclusive jurisdiction of congress, under the provision of the constitution on that subject.

This jurisdiction is denied by counsel for petitioner, and as this is the only question in the case, and all the facts necessary to its decision are before us, it can be as well disposed of on the application for the writ as on a return to the writ when issued.

What constitutes the military reservation of Fort Leavenworth is now, and has been the property of the United States ever since the country of which it is a part was purchased from France. There is not, and never could be, any consent of the state of Kansas to that purchase, literally speaking, because the state of Kansas had no existence for fifty years after that transaction, and her consent, since she became a state, could in no way affect that purchase, or the title by which the United States holds the reservation.

The locus in quo had a military fort on it, and had been reserved for military purposes for many years before Kansas was admitted into the Union as a state, but when congress

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

passed the law by which the state was created, it included this reservation within the boundaries of the state, and made no exception, as regards this piece of land, of the sovereign rights of jurisdiction which it ceded to the state in that transaction. The effect of this, as this court held in U. S. v. Stahl [Case No. 16,373], was that, while the title and right of use for all lawful purposes remained in the United States, as it did in all its other land in the state, the political jurisdiction passed to the state of Kansas.

If matters had remained in this condition to the present time, there can be no doubt that the warrant under which the prisoner is now held would be void, because the jurisdiction of the offence would be in the state, and not in the federal government. But on the suggestion of the war department of the federal government to the authorities of the state of Kansas, the legislature passed a law, approved February 22, 1875 [Laws 1875, p. 95], granting to the United States exclusive jurisdiction over the military reservation, and if this act is effective for that purpose, the writ must be denied.

It is objected that the legislature has no constitutional power to part with its jurisdiction over any part of the soil within the boundaries of the state. Unless the act in question is within the purview of section 8, art. 1, of the constitution of the United States, it is unnecessary to inquire further as to its validity. If it is, then it is valid, for the reason that the constitution has expressly conferred on the legislatures of the states the right to give consent to such jurisdiction. It is also urged that some act of congress assuming this jurisdiction is necessary, even if the statute of Kansas be valid; but I am of opinion that when the locus in quo is under the control of the United States and is used as a fort, magazine, or other purpose mentioned in the constitution, the laws of the United States, framed for such places, become the law of these places upon the consent of the state lawfully given for that purpose.

We then come to the question whether this act, conferring jurisdiction, passed by the state of Kansas, is within the meaning of the constitutional provision referred to—"congress shall have power to exercise exclusive legislation in all cases whatsoever over such district, not exceeding ten miles square, as may, by cession of particular states, and the acceptance of congress, become the seat of government of the United States, and to exercise like authority over all places purchased by consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings." If the consent of the state to the act of buying the land, or acquiring the title to it, is all that can be considered in construing this provision, then, as we have already said, the state of Kansas has never given any such consent. But if

this is a form of expression whose true meaning is that the general government, as respects lands needed for forts, etc., may, whether such lands are owned by it or shall be purchased from others, exercise exclusive jurisdiction, whenever the consent of the legislature of the state to the exercise of such jurisdiction shall be given, then the legislature of Kansas, in the act referred to, has given the consent required by the federal constitution. As this court remarked in the case of U. S. v. Stahl [supra], it can hardly be supposed that the constitution intended to make the consent of a state necessary to its power to erect forts, etc., in that state, nor to the acquisition of title to land used for that purpose. Such a proposition would be placing the military power of the government, which in every other respect is so ample, at the mercy of the states as regards forts, arsenals, etc. A similar remark will apply to buildings for post-offices, court-houses, etc. It is impossible to believe that the constitution intended to restrict the right of eminent domain, and to declare that in any such instance the consent of the state is necessary to the validity of a purchase for such purpose. If, however, we suppose that in many such cases it would be desirable for the national government to hold such places free from the general jurisdiction which the state in all other cases exercises within her boundaries, but that she shall not be ousted of that jurisdiction except by her own consent, and that this consent shall be given by her legislature, we have at once a motive and a reasonable explanation of the purpose of the provision of the constitution. The consent of the state being necessary for no other purpose than that of plenary jurisdiction in the federal government, it is consent to this which is provided for in the constitution.

This consent may be given whether the land is purchased in the common meaning of that word or not, and may be given either before or after title is acquired by the United States. The elements necessary to render valid this consent to the exercise of federal jurisdiction are, title in the United States and possession for one of the purposes mentioned in the constitution. In 6 Op. Attys. Gen. 577, many of the statutes of the states granting this exclusive jurisdiction are examined, and their language criticised, and in very few instances is any expression of consent to the purchase used, but a direct and express grant of jurisdiction, with occasional qualifications on that point. This is an implied construction, that the thing to be granted by the state is her consent to the exercise of jurisdiction, and not to the mere purchase which is provided for in the constitution.

The constitution was adopted at a time when the federal government owned no land. Hence, when it desired any it must pay for it, whatever might be the uses to which it was appropriated. It was, therefore, a very natural form of expression to say that when

the legislature gave consent to the purchase for such and such purposes, the United States should exercise exclusive jurisdiction. Did they mean that if the United States should become the owner of land which it desired to use for such purposes, the legislature could not grant jurisdiction also, if within her limits? or is it but a just construction of the clause, that whenever the United States is the owner of the land which it uses for a fort or arsenal, the legislature of the state, by its own consent, may permit congress to exercise exclusive jurisdiction over such land? I think the latter the more reasonable construction, and the writ is denied. Writ denied.